**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

Crystal Moses

        v.                          Civil No. 10-cv-253-PB

Mark Mele

**O R D E R**

        Plaintiff Crystal Moses ("Moses") has filed a civil rights
action against defendant Mark Mele ("Mele") alleging unlawful
seizure, false arrest, malicious prosecution, deprivation of
freedoms of speech and association, a violation of plaintiff's
substantive due process rights, and state law torts for false
arrest and malicious prosecution.  See Compl. (doc. no. 1).  The
complaint alleges that Mele, while employed as a police officer
in Lebanon, New Hampshire, caused Moses to be arrested for and
charged with a crime, for which he did not have probable cause,
by falsely representing to other officers, the Lebanon District
Court, and the Grafton County grand jury, that Moses had
committed the felony of tampering with witnesses and informants.
See id.

        Before the court is defendant's motion for a protective
order (doc. no. 17) and addendum to motion for a protective
order (doc. no. 21), and plaintiff's objection thereto (doc. no.

25).  For the reasons explained herein, the motion is granted in part and denied in part.

## Background[1]

On July 15, 2008, Moses accompanied her son's girlfriend, Catherine Sims, to the Lebanon Police Department ("LPD").  Mele had requested that Sims come to the LPD to be questioned regarding a car accident in which her boyfriend (Moses's son) was involved, and to which she was a witness.  Mele stated that he wanted to question Sims to determine whether Sims had previously provided the police with a false statement about the accident.  Sims agreed to speak with defendant if Moses could accompany her.  Mele agreed that Moses could accompany Sims.

At the police station, however, Mele refused to speak to Sims with Moses present.  Sims stated that she would not speak with Mele alone, and that she wanted to call her mother and to speak with Moses.  Sims, following Moses's advice and accompanied by Mele, walked outside the police station to call Sims's mother.  Once outside, Mele confronted Sims and Moses and urged Sims to come back into the police station.  Mele also called other LPD officers for assistance.  Moses "ushered" Sims

---

[1]The factual background is drawn from plaintiff's complaint (doc. no. 1).

into the passenger side of Moses's car and, while still on the passenger side of the car, argued with Mele, who was attempting to convince Sims to get out of the car.

Mele requested that the other officers who had responded to his call for assistance separate Sims and Moses and detain Moses.  Mele told one of the other officers to arrest Moses for witness tampering for telling Sims that she couldn't talk to Mele alone.  Moses claims that Mele's accusation of witness tampering was false and that Mele knew it was false when he made it.  Moses was arrested and processed.  Mele filed a complaint in the Lebanon District Court accusing Moses of tampering with a witness or informant, a felony, by inducing Sims to withhold information and by trying to forcibly remove Sims from the LPD when Sims wanted to give a statement.

Moses was released on bail and retained counsel to represent her on the criminal charges.  At a September 23, 2008, probable cause hearing in the criminal case, Mele testified falsely that Sims had agreed to speak with him alone but that Moses forcibly removed Sims from the LPD to prevent Sims from talking to Mele.  The case was bound over to the Grafton County Superior Court where the grand jury indicted Moses on November 21, 2008, ostensibly after hearing Mele's testimony.

One day before a scheduled hearing on Moses's motion to dismiss the indictment, the government nol prossed the indictment "due to witness problems."  Moses then learned that a number of criminal cases involving Mele were dismissed due to some issue regarding his credibility, and that Mele had been terminated from the LPD.

### Procedural History

On October 12, 2010, the parties to this action submitted a discovery plan to the court which was approved on October 13, 2010.  Trial is set for October 4, 2011.

On November 10, 2010, plaintiff served a subpoena on the Grafton County Superior Court requesting a recording of the grand jury testimony for her criminal case, and "[a] copy of all ex parte motions and supporting exhibits filed by the Grafton County Attorney's Office during the years 2008 and 2009 that pertain in any way to Lebanon Police Officer Mark Mele, and copies of any ex parte court orders issued upon such motions." On that day, plaintiff also served a subpoena on the Lebanon Police Department for production of, among other things, materials related to plaintiff's arrest or prosecution, a complete copy of Mele's personnel file, including all records of citizen complaints, internal complaints, or internal

disciplinary proceedings, and any police department paperwork located within or outside of Mele's file having anything to do with Mele's termination from the police department.

On November 19, 2010, defendant filed a motion to quash the subpoenas pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iv) (doc. no. 9), asserting that, among other things, the requested information should not be disclosed, as it was confidential or subject to privilege, and because disclosure of the requested materials pursuant to the subpoena would unduly burden Mele.

On December 16, 2010, the court granted the motion to quash.  Shortly thereafter, plaintiff filed a motion to vacate the order, and a response to the motion to quash (doc. nos. 10 and 11).  Defendant objected to the motion to vacate (doc. no. 12).  The court directed the parties to confer and attempt to resolve the matter by agreement (doc. no. 13).  Pursuant to that order, defendant filed a status report on January 21, 2011 (doc. no. 14).

The status report indicated that the motion to quash would be withdrawn.  Doc. No. 14.  Further, the status report indicated that counsel for defendant agreed to review Mele's personnel record and to produce a privilege log.  Id.

Defendant's counsel also agreed to turn over any withheld items
to the court for in camera review.[2]   Id.

Defendant has now filed, for in camera review, copies of
Mele's entire LPD personnel record and records regarding an
internal investigation conducted by the LPD in the spring and
summer of 2009.  A motion for in camera review (doc. no. 19) and
a motion to seal the documents submitted (doc. nos. 16 and 22)
have been filed and granted.  Defendant has provided records for
in camera review to the court and a privilege log (doc. no. 23)
to plaintiff.

Simultaneously with filing the records, defendant filed a
motion for a protective order (doc. no. 17).  Defendant has also
filed an addendum to the motion for a protective order (doc. no.
21).  Plaintiff has filed an objection (doc. no. 25).  The
motion for a protective order was referred to the magistrate
judge by Judge Barbadoro, pursuant to 28 U.S.C. § 636(b)(1)(A).
In the motion for a protective order, defendant requests that
the court decline to order disclosure of any of the documents
submitted.

---

[2]The parties agreed that, as the State of New Hampshire had
provided plaintiff with a Rule 45(c)(2)(B) objection letter
regarding the grand jury subpoena, plaintiff would file a motion
to compel to obtain the records requested from the Grafton
County Superior Court in the future, if necessary.  Doc. No. 14.
No issue regarding those records is before the court at this
time.

This court has conducted an in camera review of the
documents submitted by defendant.  As explained below, the
motion for a protective order (doc. nos. 17 and 20) is granted
in part and denied in part.

## Discussion

I.   Discovery Standard Generally

> Unless otherwise limited by court order, the scope of
> discovery . . . [extends to] any nonprivileged matter
> that is relevant to any party's claim or defense --
> including the existence, description, nature, custody,
> condition, and location of any documents . . . .
> Relevant information need not be admissible at the
> trial if the discovery appears reasonably calculated
> to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  "The purpose of pretrial discovery is
to make trial less a game of blindman's bluff and more a fair
contest with the basic issues and facts disclosed to the fullest
practicable extent."  Wamala v. City of Nashua, No. 09-cv-304-
JD, 2010 WL 3746008, at *1 (D.N.H. Sept. 20, 2010) (internal
quotation marks omitted).

II.  Motion for Protective Order

The court may grant a protective order, for good cause, "to
protect a party or person from annoyance, embarrassment,
oppression, or undue burden or expense."  Fed. R. Civ. P.
26(c)(1).  "Rule 26(c) confers broad discretion on the trial

court to decide when a protective order is appropriate and what degree of protection is required. . . . The trial court is in the best position to weigh fairly the competing needs and interest of parties affected by discovery." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).  Rule 26(b)(2) allows the court to limit discovery of both privileged and nonprivileged information, and requires the court to balance the burdens that would be imposed by the proposed discovery against the benefits of disclosure.  See Gill v. Gulfstream Park Racing Ass'n, 399 F.3d 391, 400 (1st Cir. 2005).

"[T]he party seeking a protective order has the burden of showing that good cause exists for issuance of that order." See Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988).  The "good cause" standard "'is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case,'" including "considerations of the public interest, the need for confidentiality, and privacy interests." Gill, 399 F.3d at 402 (citing Seattle Times, 467 U.S. at 35 n.21).

Defendant has moved for a protective order to prevent the disclosure of the materials reviewed in camera on the following grounds: (1) disclosure would violate a Lebanon District Court order sealing the documents; (2) the documents are protected by

a state law privilege; (3) the documents are irrelevant to the instant case; and (4) disclosure of the records would constitute an invasion of Mele's right to privacy.  Applying the relevant standard for evaluating a motion for a protective order, the court finds good cause for issuing a protective order to prevent third party access to Mele's personnel file and the internal investigation files, and directs disclosure of the documents at issue to plaintiff and plaintiff's counsel, as specified below.

 A. <u>Lebanon District Court Order</u>

Defendant claims that the LPD internal investigation file and Mele's LPD personnel file have been sealed by an order of the Lebanon District Court, preventing counsel from providing those files to plaintiff.  Defendant has identified a number of documents submitted for in camera review which he does not object to providing to plaintiff, but which, he states, he is prevented from disclosing due to the Lebanon District Court order.

Plaintiff argues that no copy of the Lebanon District Court order has been provided to the court, in violation of United States District Court District of New Hampshire Local Rule ("LR") 7.1.  LR 7.1 requires a party relying on facts not found

in the record, to be "accompanied by affidavits or other documents showing the facts."

Upon review of the records submitted, the court has discovered that, in fact, the Lebanon District Court order was submitted for in camera review.  The privilege log identifies, at documents numbered LPDIA 1-4,[3] a letter and motion for in camera review filed in the Lebanon District Court.  The motion, located at LPDIA 2-4, pertains to a criminal case before the Lebanon District Court ("LDC"), unrelated to the matter here, in which the internal investigation and personnel records requested here were submitted to that court for in camera review.  The State, in the motion at issue, sought to seal the records, and to protect the records from being disclosed in further criminal proceedings, if the LDC, after conducting its in camera review, found that the information contained therein was not discoverable.  The LDC granted the motion for in camera review by endorsed order.

Nothing has been submitted, however, that shows that the LDC in fact sealed the records after granting the motion and conducting its in camera review.  Even if the motion to seal had

---

[3]The submitted documents have been divided into two groups, an internal investigation file, with pages numbered as LPDIA 1-444, and Mele's LPD personnel file, with pages numbered as MMPRS 1-217.  Documents will be identified by these page numbers in this order.

been granted, however, the order would appear only to restrict the use of the records in further criminal proceedings and would not apply to a civil case such as this case involving private parties, and not the State.

The court finds that there is no LDC order that affects this court's discovery decisions in this matter.  Defendant has stated that he does not object to the provision of certain records and would not seek a protective order as to such records if the court deems them not protected by an LDC order.  As the court finds they are not protected by an LDC order, those records, identified at the following page numbers, must be disclosed to plaintiff[4]:

    LPDIA pp. 47-109
    LPDIA pp. 171-178
    LPDIA pp. 349-357
    MMPRS pp. 6-59
    MMPRS pp. 88-118
    MMPRS p. 121
    MMPRS pp. 126-130

Plaintiff also argues that defendant waived his argument that the records are sealed by the LDC by voluntarily providing the records to this court for in camera review.  Because the

---

[4]Many of the documents submitted appear in both the internal investigation file and Mele's personnel file, as noted in the privilege log.  The defendant need not provide more than one copy of those documents to plaintiff.

court finds the records are not subject to an LDC seal, the
court need not reach plaintiff's waiver argument.

    B.   <u>State Law Statutory Privilege</u>

    Defendant urges the court to apply N.H. Rev. Stat. Ann.
("RSA") § 516:36, II, which protects internal investigation
records of a law enforcement officer from being admitted in
evidence in a civil action.  That law states:

> All records, reports, letters, memoranda, and other
> documents relating to any internal investigation into
> the conduct of any office, employee, or agent of any
> state, county, or municipal law enforcement agency
> having the powers of a peace officer shall not be
> admissible in any civil action other than in a
> disciplinary action between the agency and its
> officers, agents, or employees.  Nothing in this
> paragraph shall preclude the admissibility of
> otherwise relevant records of the law enforcement
> agency which relate to the incident under
> investigation that are not generated by or part of the
> internal investigation.  For the purposes of this
> paragraph, "internal investigation" shall include any
> inquiry conducted by the chief law enforcement officer
> within a law enforcement agency or authorized by him.

RSA § 516:36, II.

    "[I]t is generally recognized that, with respect to federal
claims, a court is not obligated to apply the privileges
provided by a state statute unless the court chooses to do so."
<u>Hoyt v. Connare</u>, 202 F.R.D. 71, 74 (D.N.H. 1996).  Assertions of
privilege in federal court, in cases dealing with federal
questions, are governed by federal law.  <u>See</u> Fed. R. Evid. 501.

State statutes, while binding on state courts determining privilege, do not bind federal courts deciding federal questions.  See Green v. Fulton, 157 F.R.D. 136, 139 (D. Me. 1994) (citing In re Hampers, 651 F.2d 19, 21-24 (1st Cir. 1981)).

Even where federal courts are not required to apply state evidentiary privileges, however, federal courts may, and in some cases should, recognize state evidentiary privileges where to do so would not come at substantial cost to federal procedures and substantive policies.  See Green, 157 F.R.D. at 139; see also Hampers, 651 F.2d at 22 (discussing factors to be balanced by federal court in weighing whether to recognize a state statutory privilege).  The specific issue before this court, whether the requested records are discoverable to assist plaintiff in prosecuting her § 1983 action, is a federal question before a federal court.  Accordingly, Fed. R. Ev. 501 applies, and the court, in making its determination, will decide questions of privilege based on federal law.  See Krolikowski v. Univ. of Mass., 150 F. Supp. 2d 246, 248 (D. Mass. 2001); see also N.O. v. Callahan, 110 F.R.D. 637, 640 (D. Mass. 1986) (Fed. R. Evid. 501, which governs evidentiary privileges in federal court, applies to pretrial discovery disputes).

In a case where a statutory privilege may apply to bar disclosure of certain evidence in discovery, "New Hampshire courts considering issues of disclosure utilize a balancing test, the intent of which is to determine whether the benefits of disclosure outweigh the benefits of nondisclosure." Hoyt, 202 F.R.D. at 75 (internal citations and quotation marks omitted).  This balancing test has been utilized in this court. Id.

Defendant argues that the court should utilize the process outlined in Hampers to determine whether to apply the state law privilege in federal court.  Under Hampers, to aid in its decision regarding whether to apply a state law privilege, a court should first determine whether the state court would recognize the privilege.  See Hampers, 651 F.2d at 22.  If the court determines that the state court would recognize the asserted privilege, the court should then determine whether the asserted privilege is "intrinsically meritorious."  Id.  The Hampers court cautioned, however, that "honoring such a privilege in federal court will usually involve some cost to the federal interest in seeking the truth in federal question cases. It makes a difference whether the federal interest in seeking full disclosure is a weak or strong one."  Id.  The court further recognized that "the whole purpose behind § 1983 was to

insure an independent federal forum for testing alleged constitutional violations by state officials."  Id.

RSA § 561:36, II, does not, by its terms, bar disclosure of police internal investigation files in discovery.  The statute states, instead, that police records of internal investigations shall not be "admissible in any civil action" in a court. Accordingly, it is not at all clear that the courts of New Hampshire would apply this statute to bar discovery of these documents in this case.  Defendant has not proffered any case law or other authority, and the court finds none, which would indicate that New Hampshire state courts would apply RSA § 561:36, II, to prevent discovery in a civil case, even where the documents might not be admissible themselves, but might lead to the discovery of admissible evidence.

In this case, weighing the plaintiff's need for the disclosure of the records and the defendant's interest in application of the privilege, assuming, arguendo, that the privilege would apply to a discovery question, the court finds that the balance of interests weighs in favor of the plaintiff. The state statutory privilege, if applied in this case, would work a substantial harm on the policy of providing citizens with a federal forum in which to litigate their civil rights claims. The records sought in this case, as more fully discussed below,

if disclosed, are reasonably likely to be useful to plaintiff in prosecuting this action, whether or not they are ultimately deemed admissible by the trial court.  The plaintiff has a strong interest in access to information that may impact central issues in her case.  Accordingly, the court will not apply the privilege found in RSA § 561:36, II, to bar discovery of the internal investigation records in this case.

    C.  <u>Relevancy</u>

Defendant seeks to block the disclosure of the submitted documents by arguing that the contents of those documents are neither relevant to the dispute between the parties, nor likely to lead to relevant evidence in the case.  Specifically, defendant states that the internal investigation occurred "well after" the July 2008 events which form the basis of the instant suit, and that the subject matter of the internal investigation is related to Mele's application for worker's compensation benefits, not to actual "police work."

Plaintiff disagrees, stating that the internal investigation appears to be related to Mele's truthfulness, as the outcome of the investigation involved the dismissal of a number of criminal cases, including, apparently, plaintiff's case, which was dropped by the state due to "witness problems."

Mele was the principal witness in plaintiff's criminal case.
Under the circumstances, it is not unreasonable for plaintiff to
assume that the "witness problems" that caused the state to drop
her case concerned Mele's credibility.  Plaintiff claims that
incidents of untruthfulness or dishonesty by Mele, in relation
to his worker's compensation claim, are relevant to this action
because Mele's credibility is the central issue in the instant
case.

Plaintiff has asserted claims of malicious prosecution and
false arrest against Mele, based on Mele's alleged fabrication
of probable cause to arrest plaintiff in July 2008.  Plaintiff
claims that Mele caused her damages by lying to fellow officers
about the existence of probable cause, lying to the court at a
probable cause hearing, and, presumably, lying to, or otherwise
causing false information to be presented to, the grand jury
that indicted plaintiff.

Fed. R. Civ. P. 26(b)(1) allows discovery of "any
nonprivileged matter that is relevant to any party's claim or
defense."  "[W]hen an objection arises as to the relevance of
discovery, the court would become involved to determine whether
the discovery is relevant to the claims or defenses and, if not,
whether good cause exists for authorizing it, so long as it is
relevant to the subject matter of the action."  In re Subpoena

to Witzel, 531 F.3d 113, 118 (1st Cir. 2008) (internal citation
and quotation marks omitted); In re Sealed Case (Med. Records),
381 F.3d 1205, 1215 n.11 (D.C. Cir. 2004) (recognizing that Rule
26 distinguishes discovery relevant to claims or defenses and
discovery relevant to the subject matter of the action, and that
the rule tolerates discovery of both).  If the requested
internal investigation and personnel records are relevant to
either the claims or defenses in this action or are otherwise
relevant to the subject matter of the action, Rule 26 authorizes
their discovery.

       The evidence submitted for in camera review bears on Mele's
honesty, truthfulness, or credibility.  As defendant concedes,
plaintiff's case boils down, in large part, to whether probable
cause actually existed to arrest and charge Moses, or whether
Mele fabricated facts regarding the July 2008 incident.  The
materials submitted, therefore, are discoverable to the extent
they bear on Mele's credibility, honesty, or truthfulness.
Further, whether these documents are ultimately deemed
admissible, the court finds that their discovery could lead to
relevant and admissible evidence.  Under Fed. R. Evid. 404, 405
and 608, in some circumstances, certain evidence and testimony,
including evidence of discrete prior bad acts, may be admitted
on the question of a party's or witness's character or

reputation.  The records here may be admissible themselves and, in any event, might well lead to the discovery of admissible evidence.[5]

D.   Invasion of Privacy

Defendant asserts that his right to privacy outweighs plaintiff's right to discovery of his personnel records, as those records are not relevant to plaintiff's cause.  As discussed above, the court has found that many of the records reviewed in camera are relevant to Mele's credibility.  Mele's credibility is relevant to the subject matter of plaintiff's cause and the records should therefore be disclosed.

"[P]ersonnel files contain perhaps the most private information about an employee within the possession of an employer."  Whittingham v. Amherst Coll., 164 F.R.D. 124, 127 (D. Mass. 1995).  The court will direct disclosure only of those personnel records that are relevant to Mele's honesty and truthfulness, or which defendant has expressed some willingness to provide.  The court finds that, to the extent the records relate to Mele's honesty and truthfulness, the plaintiff's interest in such records outweighs any privacy right that defendant may have in the records.  To the extent records are

_____

[5]The court makes no finding and takes no position on the future admissibility of any evidence in this case.

included in the submitted personnel file that do not have any
bearing on any credibility issue themselves, or any relation to
the incidents giving rise to any credibility issue, such records
do not need to be disclosed.

Defendant's privilege log notes that he would agree to
provide certain records without a court order upon execution of
a confidentiality agreement by plaintiff's counsel.  These
documents are numbered as:

        MMPRS pp. 1-5
        MMPRS pp. 60-65
        MMPRS pp. 82-87
        MMPRS pp. 119-120
        MMPRS pp. 122-125
        MMPRS pp. 134-136
        MMPRS pp. 167-168
        MMPRS p. 210
        MMPRS p. 212

As explained more fully below, all of the records ordered
disclosed will be subject to a protective order, the terms of
which are spelled out below, which will prevent plaintiff, or
plaintiff's counsel, from further disclosing any information
contained in the records without first seeking permission of the
court.  Thus, prior to introducing the evidence at trial,
including it in an unsealed filing, or disclosing the contents
to any third party, plaintiff or counsel must first seek the
court's permission.  If plaintiff makes such a request, the
court will have the opportunity to evaluate, with specificity,

the competing interests of the plaintiff in utilizing a particular piece of information for a particular purpose, and the defendant in preventing further disclosure.  Any threat that does exist to defendant's privacy is thus minimized.

The protective order issued this date eliminates defendant's need for a confidentiality agreement.  Accordingly, those records defendant has identified that he will disclose without objection, as listed above, will be ordered disclosed. Where defendant has not made any relevancy or invasion of privacy objections to the disclosure of these, the court will make no independent determination of their relevance or their imposition on Mele's privacy at this time.

Finally, the court notes that the records submitted for in camera review arrived at the court with certain information already redacted.  For example, defendant's social security number, date of birth, account numbers, the full names of certain people with whom defendant communicated, and personal information of witnesses, have all been redacted from the records.  The court approves maintaining these redactions in the disclosure of the records as there is no apparent need for plaintiff to have that information.

III. <u>Disclosure Order</u>

The court, after review of the documents in camera, finds that the following documents are discoverable as they are relevant to the subject matter of the instant action, not invasive of Mele's privacy, and not subject to any privilege or nondisclosure order:

             LPDIA pp. 1-6
             LPDIA pp. 11-46
             LPDIA pp. 110-210
             LPDIA pp. 225-424
             LPDIA pp. 426-444
             MMPRS pp. 1-177
             MMPRS pp. 181-191

The court further finds that the following documents are not relevant either to the claims or defenses in this case, or to the subject matter of this case.  These documents need not be disclosed to plaintiff:

             LPDIA pp. 7-10
             LPDIA pp. 211-224
             LPDIA p. 425
             MMPRS pp. 178-180
             MMPRS pp. 192-209
             MMPRS p. 211
             MMPRS pp. 213-217

IV.  <u>Protective Order</u>

Rule 26 allows the court broad discretion in limiting the scope of discovery.  Here, defendant has requested only a general protective order barring disclosure of the contents of

the submitted materials to plaintiff.  The court finds, as
explained above, that defendant does not possess a privacy
interest that outweighs plaintiff's right to access some of the
submitted documents.

The burden rests on defendant to demonstrate good cause for
a protective order.  See Public Citizen, 858 F.2d at 789.  The
defendant's pleadings are silent on the issue of whether, if
plaintiff is provided access to the records, some protective
order prohibiting public disclosure of the records is
appropriate.  The court finds, however, that personnel and
related records are inherently private and entitled to some
measure of protection from public disclosure.  See Whittingham,
164 F.R.D. at 127.

Neither party has addressed the issue of whether the public
has an interest in either the disclosure or nondisclosure of the
records.  The court finds that, generally, the public has an
interest in both transparency in the working of agencies that
serve the public, and in access to information regarding the
efficacy of law enforcement agencies in policing their own.  The
court also finds, however, that the public has an interest in
confidentiality in internal investigations, so that informants
might be candid and forthcoming in reporting police misconduct
without fear of retaliation.

In this case, however, the court finds that there is minimal public interest in granting access to the submitted information to nonparties prior to a determination of admissibility.  To the extent the records may be relevant to Mele's credibility as a witness in criminal cases, and therefore of arguable public concern, it appears those issues have already been addressed by the LPD and Grafton County Attorney's Office. There is no indication that, two years after Mele was terminated from the LPD, there remain any issues of public import related to Mele's honesty and trustworthiness.

Accordingly, the court finds that the public interest in access to records is outweighed, at this time, by Mele's interest in privacy in the personnel, employment, and internal investigation records.  Further, the court's power to modify this order "provides a safety valve for public interest concerns, changed circumstances or any other basis," and is sufficient to protect any public interest in disclosure asserted at a later date.  See Poliquin v. Garden Way, Inc., 989 F.2d 527, 535 (1st Cir. 1993).

Plaintiff and plaintiff's counsel are ordered not to disclose to any third party any such documents, without the specific permission of the court unless defendant assents to disclosure or waives nondisclosure.  Unless defendant assents to

a particular disclosure, plaintiff must seek permission to use this information in open court, in an unsealed filing, or in communications with anyone not a party to this case.  To obtain permission to further disclose the information contained in Mele's personnel records or the internal investigation file, plaintiff must make a particularized showing of need to disclose that document that is not outweighed by defendant's privacy interests.  Upon completion of this matter, and all appeals of this matter, counsel shall return to defendant or his counsel all of the submitted documents, including any copies thereof, or shall certify to defendant and to the court that those documents have been destroyed.

### Conclusion

The motion for protective order (doc. nos. 17 and 20) is GRANTED in part and DENIED in part, as specified herein.

Defendant must, within ten days of the date of this order, provide plaintiff with copies of the following documents, as redacted when submitted for in camera review:

        LPDIA pp. 1-6
        LPDIA pp. 11-210
        LPDIA pp. 225-424
        LPDIA pp. 426-444
        MMPRS pp. 1-177
        MMPRS pp. 181-191
        MMPRS p. 210
        MMPRS p. 212

All of the documents directed disclosed are subject to the protective order against third party access, described in this order.

Defendant need not provide duplicate documents to plaintiff; each document need be provided only once.

**SO ORDERED.**

_____
Landya B. McCafferty
United States Magistrate Judge

Date: June 1, 2011

cc:  Brian Robert Marsicovetere, Esq.
     Daniel J. Mullen, Esq.

LBM:jba